## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL ESPOSITO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NUTRONIX REVOLUTION, INC. d/b/a NXR GLOBAL,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**PUTATIVE CLASS ACTION** |

Plaintiff Daniel Esposito ("Plaintiff") brings this class action against Defendant Nutronix Revolution, Inc. d/b/a NXR Global ("Defendant") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. This putative class action is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Pennsylvania Telemarketer Registration Act ("TRA"), 73 P.S. §§ 2241-49, and stems from Defendant's practice of harassing consumers in Pennsylvania and throughout the United States with automated and prerecorded telemarketing calls and/or unsolicited telemarketing text messages.

2. Defendant purports to sell subscription TV and video streaming services in exchange for a monthly fee to consumers nationwide. To drum-up new business, Defendant engages in intrusive and unlawful telemarketing campaigns.

3. Defendant's illegal telemarketing activities target individuals nationwide, without their prior express consent and with little regard for their privacy.

1

4.      Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the harassment, aggravation, and disruption of the daily life of Plaintiff as well as thousands of individuals nationwide.  Plaintiff also seeks statutory damages on behalf of himself and members of the Classes, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction because this case arises out of violations of federal law (i.e., the federal TCPA).  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 18 U.S.C. § 1391(b) because Defendant regularly conducts business in this district, and a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

## PARTIES

7.      Plaintiff Daniel Esposito is a natural person who, at all times relevant to this action, was a citizen of Pennsylvania.

8.      Defendant Nutronix Revolution, Inc. d/b/a NXR Global is a for-profit corporation organized under the laws of the Commonwealth of Virginia with its principal place of business at 8101 Vanguard Drive, Suite 100, Mechanicsville, Virginia 23111.

9.      Defendant directs, markets, and provides its business activities, including those alleged herein, throughout the United States, including Pennsylvania.

## THE TELEPHONE CONSUMER PROTECTION ACT

10.     The TCPA regulates and restricts the use of automatic telephone equipment.

11.    The TCPA protects consumers from unwanted calls and texts that are made with autodialers and/or prerecorded messages.

12.    The TCPA prohibits: (A) any person from calling a cellular telephone number; (B) using an automatic telephone dialing system **or** prerecorded message; (C) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

13.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

14.    In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer."  TCPA, Pub. L. No. 102-243, § 11.

15.    In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC,* 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

16.    Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...."  *Id.* at §§ 12-13.

3

17.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

19.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

20.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

21.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

4

*1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

22.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

23.    In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

27.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014,

¶ 136 (2003).

28.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate

that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring

express consent "for non-telemarketing and non-advertising calls").

29.     The TCPA also expressly applies to text messages.

30.     Congress recognized that not only can unsolicited calls and text messages be a

nuisance, but also may cause the receiver of the unsolicited communications to incur actual out-

of-pocket losses.

31.     With the advancement of technology, numerous courts have recognized the

TCPA's applicability to unsolicited text messages sent to persons' cellular telephones.

32.     Persons, like Plaintiff herein, have no control to stop unsolicited and unwanted text

messages to their cell phones.

33.     Every transmission of a text message uses data, and the longer the text is, the more

data is used.

34.     Once an unsolicited text message is received, not only is it a nuisance to the

receiver, but as importantly, that receiver is forced to incur unwanted message and/or data charges

from their cell phone carrier.

35.     As set forth herein, that is exactly what occurred to Plaintiff and other members of

the putative class.

36.     Plaintiff and the members of the proposed class received unsolicited marketing

text messages from Defendant, and consequently incurred additional message and/or data

charges to their cell phone accounts, all because Defendant wished to advertise and market its products and services for its own benefit.

37.     Moreover, the Plaintiff and the proposed class suffered, *inter alia*, aggravation, frustration and annoyance.

38.     "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients.  A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"  *Van Patten v. Vertical Fitness Grp., LLC*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. Jan. 30, 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), as revised (May 24, 2016)) (emphasis in original).

## THE UNIFORM POLICIES OF DEFENDANT
## THAT GIVE RISE TO THE CAUSE OF ACTION

39.     On October 17, 2018 at 12:07 p.m., Defendant transmitted the following unsolicited text message to Plaintiff's cellular telephone ending in – 0757 (the "0757 Number"):

> D., Bernard here (Linkedin) for
> $39/mo get over 3K chs of Live TV,
> Premium Movies, Sports, & PPV
> incl. Reply with keyword '3Kcable'
> for info

*See* Image A, Screenshot of Defendant's Text:



40.    The text came from the following telephone number: 786-686-0054. *See id.*

41.    Frustrated by unsolicited advertisement and determined to learn the identity of the company that was harassing him, Plaintiff called 786-686-0054, only to learn that the number was invalid.

42.    Defendant had sent the unsolicited telemarketing text to Plaintiff via a "spoofed[1]" telephone number.

43.    The unsolicited text referred to a TV and video streaming service named "IXQ TV", which is also a division of Defendant. Defendant sells subscriptions to IXQ TV to consumers nationwide at prices starting at $39 per month.

---

[1] "Spoofing occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity." https://www.fcc.gov/consumers/guides/spoofing-and-caller-id.

8

44.   As alleged with specificity herein, Defendant's text message constitutes telemarketing as Defendant was attempting to market and sell its video streaming service IXQ TV to Plaintiff.

45.   The telephone number to which Defendant, or its agents, sent the above text message was assigned to a cellular telephone service for which Plaintiff incurs a charge pursuant to 47 U.S.C. § 227(b)(1).

46.   Plaintiff is not a customer of Defendant and has not purchased or used any goods or services offered by Defendant at any time prior to the filing of this Complaint.

47.   Nevertheless, Defendant, or its agents, sent the above unsolicited text message that included an advertisement.

48.   Defendant, or its agents, sent the above unsolicited text message that introduced an advertisement.

49.   Defendant, or its agents, sent the above unsolicited text message that constituted telemarketing.

50.   Because the text message at issue "includes or introduces an advertisement or constitutes telemarketing," Defendant was required to obtain Plaintiff's "prior express consent," as defined under the TCPA, before transmitting the text message.

51.   Under the TCPA, "prior express consent" is defined as:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisement or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8).

52.   Plaintiff never signed any type of agreement whatsoever with the Defendant.

53.     As such, Plaintiff never gave prior express consent to receive Defendant's advertisements.

54.     Plaintiff further alleges that Defendant, or its agents, sent the above text message not only to Plaintiff, but also to numerous other individuals, on their cellular telephones, without obtaining their prior express consent.

55.     The texts were sent to Plaintiff and the putative class for general marketing purposes, for the commercial benefit of Defendant, and specifically to solicit the sale of Defendant's video streaming services.

56.     The texts were **not** sent to Plaintiff and the putative class for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

57.     The text messages sent to Plaintiff and the putative class was sent via an ATDS, as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A).

58.     This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

59.     As outlined herein, the unsolicited commercial texts sent by Defendant or its agents to Plaintiff and the putative class violated 47 U.S.C. § 227(b)(1).

60.     Plaintiff is the subscriber and sole user of the 0757 Number, and is financially responsible for phone service to the 0757 Number.

61.     Upon information and belief, Defendant utilized a combination of hardware and software systems to make the calls at issue in this case.  The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

62.     Through its telemarketing calls and text messages, Defendant violated Plaintiff's substantive rights under the TCPA.

63.     Further, Plaintiff suffered the following injuries:

        a.  Inconvenience;

        b.  Unwanted occupation of his time and mental energy;

        c.  Unwanted occupation of his cellular telephone;

        d.  Nuisance;

        e.  Trespass on his cellular telephone; and

        f.   Aggravation and annoyance.

## CLASS ALLEGATIONS

64.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

65.     Plaintiff brings this case on behalf of a Class (hereinafter the "Class") defined as follows:

**All persons within the United States who, within the four years prior to the filing of this Complaint, received a telephone call or text message made through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, promoting Defendant's goods or services, to said person's cellular telephone number, who had not expressly consented in writing to receiving such call or text.**

66.     Plaintiff also brings this case on behalf of a Subclass (hereinafter the "Text Message Subclass") defined as follows:

**All persons within the United States who, within the four years prior to the filing of this Complaint, received the text message depicted in Image A.**

67.     Plaintiff also brings this case on behalf of a Subclass (hereinafter the "PA TRA Subclass") defined as follows:

**All Pennsylvania citizens, who had not granted Defendant prior express consent nor had a prior established business relationship, who received a text message made by or on behalf of Defendant that promoted Defendant's products or services, within four years prior to the filing of the Complaint.**

68.    Defendant and its employees or agents are excluded from the Class and Subclasses (hereinafter collectively referred to as the "Classes"). Plaintiff does not know the number of members in the Classes, but believes the members of the Classes number in the several thousands, if not more.

69.    Upon information and belief, Defendant has sent text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States and Pennsylvania without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

70.    The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendant's call records.

71.    There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

> (1) Whether Defendant sent non-emergency text messages to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant sent non-emergency text messages to Plaintiff's and Class members' cellular telephones;
>
> (3) Whether Defendant can meet its burden of showing that it obtained prior express consent to send such texts;
>
> (4) Whether Defendant's conduct was knowing and willful;
>
> (5) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (6) Whether Defendant should be enjoined from such conduct in the future.

72.    The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely violates the TCPA is correct, Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

73.    Plaintiff's claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

74.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

75.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Classes prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

76.    The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

13

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class and the Text Message Subclass)

77.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

78.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

79.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls or texts to the cellular telephones of Plaintiff and Class Members as alleged herein.

80.     These calls or texts were made without regard to whether Defendant had first obtained express written consent to make such calls or texts. In fact, Defendant did not have prior express written consent to send texts the cell phones of Plaintiff and Class Members when the subject texts were sent.

81.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make marketing telephone calls or texts to the cell phones of Plaintiff and Class Members without their prior express written consent.

82.     As a result of Defendant's conduct, and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class and the Text Message Subclass)

83.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

84.    At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

85.    Defendant knew that it did not have prior express written consent to make these calls or texts, and knew or should have known that it was using equipment that constituted an automatic telephone dialing system, in violation of the TCPA.

86.    Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls and texts, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

87.    As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III
### Violation of the Pennsylvania Telemarketer Registration Act
### (On Behalf of the PA TRA Class)

88.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

89.    As alleged with specificity herein, Defendant initiated and sent certain outbound telephone calls or text messages to Plaintiff and caused spoofed telephone numbers to appear on Plaintiff's Caller Identification

15

90.    As such, the Defendant violated the Pennsylvania Telemarketer Registration Act, 73 P.S. §§2241 – 2249 ("TRA").

91.    Specifically, Defendant violated § 2245.1 "Blocking of caller identification and other telemarketing screening products or services prohibited."

92.    Under § 2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.

93.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

94.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. § 201-9.2(a).

95.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 P.S. § 201-9.2(a).

96.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 P.S. § 201-9.2(a).

## COUNT IV
## Violation of the Pennsylvania Telemarketer Registration Act
### (On Behalf of the PA TRA Class)

97.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

98.    As alleged with specificity herein, Defendant initiated and sent certain outbound telephone calls or texts to Plaintiff and failed to promptly disclose the name of the telemarketer.

16

99.    As such, the Defendant violated the Pennsylvania Telemarketer Registration Act, 73 P.S. §§ 2241 - 2249 ("TRA").

100.    Specifically, Defendant violated § 2245(a)(5).

101.    Further, as alleged with specificity herein, Defendant engaged in several abusive telemarketing acts and practices that violated provisions of 16 CFR 310 (relating to telemarketing sales rule), in violation of § 2245(a)(9) of the TRA.

102.    Under § 2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq.*

103.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

104.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. § 201-9.2(a).

105.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 P.S. § 201-9.2(a).

106.    As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 P.S. § 201-9.2(a).

## COUNT V
## Violation of the Pennsylvania Telemarketer Registration Act
### (On Behalf of the PA TRA Class)

107.    Plaintiff incorporates by reference all of the above paragraphs of his Complaint as though fully stated herein.

108.   In addition to the violations described above, Defendant failed to register with the Office of Attorney General prior to engaging in telemarketing activities in the Commonwealth of Pennsylvania, as required by 73 P.S. §§ 2243.

109.   Under §2246, a violation of the TRA is also a violation of the Pennsylvania Unfair Trade and Practices and Consumer Protection Law, 73 P.S. §201-1 et seq.

110.   The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TRA.

111.   As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are entitled an award of $100 in statutory damages, for each and every violation, pursuant to 73 P.S. § 201-9.2(a).

112.   As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members were further damaged because Defendant willfully and/or knowingly violated the TRA. As such, Plaintiff and the TRA Class members are entitled to treble the damage amount as permitted under the statue for the willful or knowing violations under 73 P.S. § 201-9.2(a).

113.   As a result of Defendant's violations of the TRA, Plaintiff and the PA TRA Class members are also entitled to reasonable attorneys' fees and costs under 73 P.S. § 201-9.2(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on Plaintiff's own behalf and on behalf of the Class members, respectfully pray for the following relief:

a.   On the First Count for Negligent Violations of the TCPA, 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member: (i) $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief

prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

b.      On the Second Count for Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227 (b)(1); injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any and all other relief that the Court deems just and proper; and

c.      On the Third Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. § 201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper; and

d.      On the Fourth Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. § 201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper; and

e.      On the Fifth Count for Violations of the TRA, Plaintiff seeks for himself and the Class members: (i) treble damages, as provided by statute, for each and every violation, pursuant to 73 P.S. § 201-9.2(a); (ii) reasonable attorneys' fees and costs; and (iii) any and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 13, 2019

**DeNITTIS OSEFCHEN PRINCE, P.C.**

By:

Shane T. Prince, Esq.  (SP-0947)
Stephen P. DeNittis, Esq (SD-0016)
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(T): 215-564-1721
sdenittis@denittislaw.com
sprince@denittislaw.com

*Attorneys for Plaintiff*